1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

MELVIN ROBIN AUGG,

                            Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                            Defendant.

Case No. 3:15-cv-05616-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

13

14

15

16

17

18

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income (SSI) benefits. The parties have consented to have

this matter heard by the undersigned Magistrate Judge.[1] For the reasons set forth below, the

Court finds that defendant's decision to deny benefits should be reversed and that this matter

should be remanded for further administrative proceedings.

19

FACTUAL AND PROCEDURAL HISTORY

20

21

22

23

24

        Plaintiff filed an application for SSI benefits alleging he became disabled beginning

March 21, 1996, due to hepatitis C, arthritis, leg infections, diabetes, and neuropathy in his feet

and hands.[2] That application was denied on initial administrative review and on reconsideration.[3]

At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as

25

26

[1] 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

[2] Dkt. 10, Administrative Record (AR), 12, 69.

[3] AR 12.

ORDER - 1

did a vocational expert.[4]

In a written decision the ALJ determined plaintiff to be disabled when considering his substance use disorders, but to be capable of performing other jobs existing in significant numbers in the national economy and therefore not disabled, if the substance use was stopped.[5] The Appeals Council denied plaintiff's request for review of the ALJ's decision making that decision the final decision of the Commissioner, which plaintiff then appealed to this Court.[6] The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings because the ALJ erred:

(1)     in failing to adopt all of the functional limitations examining psychologist, Rebekah Cline, Psy.D., found;

(2)     in failing to properly analyze the impact of plaintiff's substance use;

(3)     in rejecting the lay witness evidence;

(4)     in assessing plaintiff's residual functional capacity (RFC); and

(5)     in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred as alleged, and therefore finds that the ALJ's decision should be reversed and that this matter should be remanded for further administrative proceedings. Although plaintiff has requested oral argument, the Court finds such argument to be unnecessary.

DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the

---

[4] AR 31-67.

[5] AR 12-24.

[6] AR 1; 20 C.F.R. § 404.981; Dkt. 3.

ORDER - 2

"proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[7] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record."[10]

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required."[11] "If the evidence admits of more than one rational interpretation," that decision must be upheld.[12] That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made."[13]

I.    The ALJ's Treatment of Dr. Cline's Findings

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.[14] Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]."[15] In such situations, "the ALJ's conclusion must be upheld."[16] Determining whether inconsistencies in the evidence "are material

---

[7] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[8] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

[10] *Batson*, 359 F.3d at 1193.

[11] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[13] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[15] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

[16] *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

ORDER - 3

(or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility."[17]

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."[18] The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[19] The ALJ also may draw inferences "logically flowing from the evidence."[20] Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."[21]

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.[22] Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."[23] However, the ALJ "need not discuss *all* evidence presented" to him or her.[24] The ALJ must only explain why "significant probative evidence has been rejected."[25]

In general, more weight is given to a treating physician's opinion than to the opinions of

---

[17] *Id.* at 603.

[18] *Reddick*, 157 F.3d at 725.

[19] *Id.*

[20] *Sample*, 694 F.2d at 642.

[21] *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

[22] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

[23] *Id.* at 830-31.

[24] *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

[25] *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

those who do not treat the claimant.[26] On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."[27] An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."[28] A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."[29]

In late June 2012, Dr. Cline conducted a psychological evaluation of plaintiff.[30] At the time, plaintiff had recently been released from prison after being incarcerated for three and a half years.[31] Dr. Cline diagnosed him with a recurrent, severe major depressive disorder and "[p]oly substance dependence, in full remission, mainly while in a controlled environment."[32] Dr. Cline opined:

> [Plaintiff] currently will have great difficulty motivating himself enough to seek work let alone to follow through with the steps necessary to obtain it. Were he given a job he would likely have a number of problems maintaining pace and productivity and interacting with others as needed on the job. He may have difficulty completing tasks as they are assigned and within a reasonable amount of time, his overall energy level is likely to be diminished and he may have difficulty keeping a regular work schedule. At this point these impairments appear to fall in the moderate to marked range.[33]

Dr. Cline concluded that with supportive treatment in place, plaintiff "may be able to consider

---

[26] *See Lester*, 81 F.3d at 830.

[27] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

[28] *Lester*, 81 F.3d at 830-31.

[29] *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

[30] AR 349-53.

[31] AR 350, 361.

[32] AR 349.

[33] AR 351.

ORDER - 5

part time employment in the next 9-12 months."[34]

The ALJ stated she gave "significant weight to the opinion of Dr. Cline noting it was [plaintiff's] difficulty motivating himself that was preventing him from working, not his severe impairments."[35] Plaintiff argues that despite giving Dr. Cline's opinion significant weight, the ALJ failed to adopt all the functional limitations she assessed, namely the problems maintaining pace and productivity, the difficulty completing tasks within a reasonable amount of time, and the potential difficulty keeping a regular work schedule. Defendant first argues the ALJ did not err in failing to adopt those limitations, because the ALJ properly inferred they were byproducts of plaintiff's noted lack of motivation, rather than his actual impairments.

That assumes, however, that the ALJ was correct in interpreting Dr. Cline's statements to mean plaintiff's motivational problems were *not* the result of his mental impairments. But a fair reading of what Dr. Cline stated does not support that interpretation. Nowhere in her opinion did Dr. Cline indicate the motivational issues were separate from plaintiff's impairments. Indeed, Dr. Cline expressly noted that testing indicated "above average effort and cooperation" on plaintiff's part, which "decrease[d] the likelihood" of malingering at the time, and that he appeared to meet the criteria of the major depressive disorder diagnosis.[36] This thus would seem to suggest that the motivational issues more likely are related to that diagnosed impairment.

Defendant next argues Dr. Cline's use of the word "may" in regard to having difficulty keeping a regular work schedule, makes that assessed limitation speculative, and therefore the ALJ properly rejected it. Although Dr. Cline did not opine that plaintiff *necessarily* would have difficulty keeping a regular work schedule, she clearly felt that diminished energy was *likely* to

---

[34] *Id.*

[35] AR 23.

[36] AR 349, 351.

ORDER - 6

be an issue for him, and thus that maintaining a regular work schedule *could* be a real problem for him. At the very least, the ALJ should have discussed this aspect of Dr. Cline's opinion, and explained why she believed it was too speculative to adopt.

The Court also disagrees with defendant that the ALJ reasonably accounted for the pace and productivity limitation Dr. Cline assessed, by restricting plaintiff to being "**off-task up to 10 percent of the workday**."[37] The ALJ again fails to explain how she came to the conclusion that Dr. Cline's statement that plaintiff "would likely have a number of problems" maintaining pace and productivity equates to being off-task ten percent of the time. Indeed, the fact that plaintiff would have *a number of problems* with doing so would seem to indicate he would be off task for up to a significantly longer period of time. Without an explanation for the above percentage the ALJ adopted, the ALJ's finding is without substantial evidentiary support. Defendant offers other possible reasons for why that finding should be supported – i.e., crediting other medical opinions and Dr. Cline's mental status examination results – but these were not ones the ALJ offered, and therefore they are not a valid basis for upholding it.[38]

II.    The ALJ's Alcoholism or Drug Addiction Analysis

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.[39] If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.[40] A claimant may not be found disabled if alcoholism or drug addiction

---

[37] AR 21 (emphasis in original).

[38] Dkt. 22, pp. 7-8; AR 21; *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

[39] 20 C.F.R. § 416.920.

[40] *See id.*

ORDER - 7

(DAA) would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled.[41]

To determine whether a claimant's alcoholism or drug addiction is a materially contributing factor, the ALJ first must conduct the five-step disability evaluation process "without separating out the impact of alcoholism or drug addiction."[42] If the ALJ finds the claimant is not disabled, "then the claimant is not entitled to benefits."[43] If the claimant is found disabled "and there is 'medical evidence of drug addiction or alcoholism,'" the ALJ proceeds "to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'"[44] Thus, if a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled."[45]

The ALJ in this case found that based on all of his impairments, including the substance use disorders, there were no jobs plaintiff could do, and thus that he was disabled, but that if the substance use was stopped, plaintiff would not be disabled as he would be able to perform other jobs existing in the national economy in significant numbers.[46] In other words, the ALJ found the substance use disorders to be a materially contributing factor here. Plaintiff argues the problem with this is that for a claimant with co-occurring mental disorders, to find DAA is a materially contributing factor, the evidence must establish that the claimant "would not be disabled in the

---

[41] *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).

[42] *Id.* at 955.

[43] *Id.*

[44] *Id.* (citing 20 C.F.R. § 416.935).

[45] *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

[46] AR 20, 23-24.

ORDER - 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

absence of DAA."[47] In addition, DAA will be not be found to be material "if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA."[48]

Plaintiff asserts, and the Court agrees, that in light of the functional limitations Dr. Cline assessed, the evidence in the record does not establish that plaintiff's depressive disorder would necessarily improve to the point of nondisability in the absence of DAA. As plaintiff points out, Dr. Cline assessed those limitations during a period when plaintiff was not engaged in substance abuse, and had not done so for more than three and a half years prior thereto due to incarceration. As plaintiff also points out, the first evidence that he was once more abusing substances was at least a year after Dr. Cline issued her opinion.[49] Given that Dr. Cline nevertheless found plaintiff would likely experience significant restriction in his ability to function, and that it could take up to 12 months before he would be able to consider even part-time employment, the ALJ failed to establish that plaintiff would not be disabled in the absence of DAA.

Defendant asserts the period of abstinence plaintiff experienced while incarcerated itself constitutes evidence establishing he would no longer be disabled if the substance abuse stopped. If anything, however, the particular section of SSR 13-2p defendant relies on here indicates the opposite:

> In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how

---

[47] Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *9.

[48] *Id.*

[49] AR 17, 687.

ORDER - 9

recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. *To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period*.[50]

This is because again the evidence from Dr. Cline's evaluation strongly indicates that plaintiff's remaining limitations during his period of abstinence may indeed rise to the level of disability. As such, the ALJ erred here as well.

III.     The ALJ's Rejection of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."[51] In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision.[52] The ALJ also may "draw inferences logically flowing from the evidence."[53]

Amanda Lane, a lay witness, stated that she has known plaintiff for about ten years and that he had significant mental and physical limitations.[54] The ALJ rejected her lay statements for the following reasons:

The statements of Ms. Lane do not establish that the claimant is disabled. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the statements is questionable. Most importantly, her statements are given little weight because they, like the claimant's, are simply not consistent with the

---

[50] SSR 13-2p, 2013 WL 621536, at *12 (emphasis added).

[51] *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

[52] *Id.* at 512.

[53] *Sample*, 694 F.2d at 642.

[54] AR 237.

ORDER - 10

1
2

preponderance of the opinions and observations by medical doctors in this case.[55]

3

Plaintiff argues these were improper reasons for rejecting those statements. The Court agrees. As

4

plaintiff points out, "friends and family members in a position to observe a claimant's symptoms

5

and daily activities are competent to testify as to her condition."[56] There is no requirement that a

6

lay witness be "medically trained to make exacting observations." Nor should there be given that

7

lay witnesses are by definition not medical professionals.

8
9

Defendant counters that an ALJ may take into account the specialty of all witnesses. She

10

cites 20 C.F.R. § 416.927(c) and SSR 06-03p in support of this argument. However, 20 C.F.R. §

11

416.927(c) solely deals with the weight the Commissioner gives specialization when considering

12

*medical opinions*. The portion of SSR 06-03p defendant cites, furthermore, specifically concerns

13

those opinions from "'other sources,' *such as teachers and school counselors, who have seen the*

14

*individual in their professional capacity*."[57] Since there is no evidence Ms. Lane saw plaintiff in

15

a professional capacity, and she clearly is not a medical professional, defendant's reliance on the

16

above legal authority is misplaced.

17

The second reason for rejecting Ms. Lane's statements also is legally insufficient. It is

18

true that an ALJ may reject lay witness evidence due to inconsistency with the medical evidence

19

in the record.[58] Here, though, the ALJ fails to point to any such evidence in the record to support

20

her determination. While as noted above the ALJ need not cite specific portions of the record in

21

order for his or her rejection of lay evidence to be upheld, and while defendant is correct that the

22

Court may draw reasonable inferences from the ALJ's decision, those inferences simply do not

23
24

---

25

[55] AR 19.

[56] *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993).

26

[57] 2006 WL 2329939, at *4 (emphasis added).

[58] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

ORDER - 11

exist here. This is because it is not at all clear what evidence the ALJ considered when rejecting

Ms. Lane's statements, or whether rejection of those statements is supported, particularly in light

of the ALJ's improper evaluation of Dr. Cline's opinion.

IV.     The ALJ's RFC Assessment

        A claimant's RFC assessment is used at step four of the sequential disability evaluation

process to determine whether he or she can do his or her past relevant work, and at step five to

determine whether he or she can do other work.[59] It is what the claimant "can still do despite his

or her limitations."[60] A claimant's RFC is the maximum amount of work the claimant is able to

perform based on all of the relevant evidence in the record.[61] However, an inability to work must

result from the claimant's "physical or mental impairment(s)."[62] Thus, the ALJ must consider

only those limitations and restrictions "attributable to medically determinable impairments."[63] In

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent

with the medical or other evidence."[64]

        The ALJ found that if plaintiff stopped his substance use, he had the RFC to perform a

modified range of sedentary work, which include the following mental functional limitations:

> **He is limited to unskilled work with simple repetitive tasks and rare changes in the work setting. He can have rare judgment or decision making. He can have no interaction with the general public as part of his job duties. He can have only occasional, superficial interaction with coworkers, dealing with things rather than people. He would be off-task**

---

[59] SSR 96-8p, 1996 WL 374184 *2.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at *7.

ORDER - 12

**up to 10 percent of the workday.** [65]

But because as discussed above the ALJ erred in evaluating Dr. Cline's opinion, in evaluating the impact of plaintiff's DAA, and in rejecting the lay witness evidence from Ms. Lane, it is far from clear that the ALJ's RFC assessment completely and accurately describes all of plaintiff's limitations or is supported by substantial evidence. Thus, here too the ALJ erred.

V.      The ALJ's Step Five Determination

        If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.[66] The ALJ can do this through the testimony of a vocational expert.[67] An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert.[68] The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.[69] Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record."[70]

        The ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff.[71] But again because the ALJ erred in assessing plaintiff's RFC,

---

[65] AR 21 (emphasis in original).

[66] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).

[67] *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

[68] *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

[69] *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

[70] *Id.* (citations omitted).

[71] AR 55-58.

ORDER - 13

it cannot be said that the vocational expert's testimony, and therefore the ALJ's reliance thereon to find plaintiff not disabled at step five is supported by substantial evidence or free of error. Plaintiff also argues the ALJ's step five determination failed to meet the statutory requirements regarding job availability, but the Court finds it unnecessary to decide this issue given the other reversible errors the ALJ committed discussed above.

## VI.   Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."[72] Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[73] Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate."[74]

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose."[75] Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.[76]

Because issues remain in regard to the medical and lay witness evidence, plaintiff's DAA, and both his RFC and his ability to perform other jobs existing in significant numbers in the national

---

[72] *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

[73] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

[74] *Id.*

[75] *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

[76] *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

ORDER - 14

economy, remand for further consideration of those issues is warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 8th day of April, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15